I am representing the appellate Peter Unakalu in this matter, and I'd like to reserve three minutes if I may. This case involves two very important issues. One, whether proper consent was given to search the trunk, including the closed containers therein, and what was the scope of that consent. And then secondly, when the police impounded the car and did an inventory search, whether that inventory search followed established and standardized police policy. The issue of consent is interesting in this case because this is a case where they didn't have a written consent form that was given to the defendant. They have that kind of form with the Seattle Police Department. It wasn't used. They had a recording that recorded it from the police patrol car, but unfortunately that was somehow missing by the time of trial. So we don't have any evidence except for what the officer and my client suggests happened that night. What's interesting about that is my client says he was stopped for an assault, a felony stop, so guns were drawn, and he's looking at officers. They're doing a lunge search of the immediate area in the car and said, do you have any weapons? We've got to know, and he says no. And he goes, well, we're going to have to search the trunk. And he says, okay. He thought under the authority of law they were going to search the trunk one way or the other. What the officer says is a little bit vague. The officer says, well, I got his permission to search the car. He doesn't make a statement how he asked that consent and how that consent was given. All he says is I asked for his permission and it was given. We have officers that hear what that permission was saying search the trunk, search the bags. But if indeed the officer says, Mr. Onokalu, do I have your consent to search the trunk of the car, the closed containers, and the bags therein, we're done. But that's not what the record reflects. The only evidence we really have in this record is that my client was under the impression that they were going to search the trunk. But just to make sure I understand, I didn't think that there was anything they found when they did that search, right? Am I mistaken about that? They open the trunk. They move the, was it duffel bags? Duffel bags, right? A few duffel bags. Right. And they move them around looking for any weapons that would be not in the duffel bags. They would be there where presumably he could grab them, although who knows how he came to the trunk to grab them. But, okay, there it is. But they don't find anything, right? So I'm not sure why this dispute about his consent matters anyway, because if I understand correctly, the way it came about that they found the stuff is when they returned the rental car to the rental agency. They then had the duffel bags, and then they conducted an inventory search, because they had these duffel bags and they needed to inventory what the contents were so they could log it in. I mean, I guess they log it in so that they, you know, I guess somebody can't claim they had a pile of cash in there, you know, something like that. So they go through this property, which is now in their custody. So I'm not sure why this dispute matters. Let's say he didn't give consent to search the trunk. Where does that advance his case? Well, let me go ahead and tell you the two reasons why I think consent really makes a difference in this case. I think one of the things is that the officer who looked in the trunk, Derez Zez, was vague in his answer of what he actually saw in the trunk. In the statement he says, I just saw some bags and that was it. What he testifies to is there were papers strung out. I saw bank numbers, security numbers. It raised my suspicion. So that will play into whether the inventory search was valid or not. But the other part that I think is integral is that the court's ruling on the consent is really important, because the court ruled that that consent, that he gave up the initial stop to search the bags or whatever, it carried through and the police had the consent from the beginning and it carried through the inventory search. And in that regard, I think the court erred. And in that regard, I think the consent is at issue. And I understand the court's reasoning about the inventory search, and I do want to get to that very much so. But I think that initial stop and search is important. Maybe you should, unless my colleagues have questions, maybe you should, because the way I view the case, and maybe you can turn me around, but the way I view the case is it doesn't really matter what happened there. At some point, they have to give the car back to the rental company because there's no place else, nothing else they can do with it. There's no friend or neighbor or relative to pick it up. They have to do something with it, and it seems to me sending it back to the rental company is a reasonable thing for them to do. And then they've got these bags, and they've got the inventory of them. So I'm not sure. Very well. Let me go straight to the inventory. So whether they have prior consent or not, I'm not sure. And I'd be happy to go straight to the inventory. I think the case that pretty much settles this completely is Florida v. Wells. And what's interesting in that case, you have very similar circumstances to this one. There you have someone who stopped for speeding. The policeman smells alcohol on the breath. They think something's going on. They search the car. They see a marijuana bud. And that same officer who stopped him decided to do an inventory search. And when he did an inventory search, he searched the briefcase and found a bag of marijuana. And what was interesting about that case, it's based on the fact that he had the suspicion that there was something inside that briefcase. Here, and that's why it interplays with the consent initially drawn, was that Officer de Rezes believed something suspicious was going on from the very start. He is the exact same person who did the inventory search. And what Wells tells us, and that's a Supreme Court decision, is that you must follow standard and established police procedures. And what we have for our police procedures is a very small vehicle inventory written procedure that says you can make a routine inspection of an impounded vehicle for items of value unless the vehicle is impounded on an investigatory hold. Absent exigent circumstances, consent, or some other legal authority, nothing in this section shall be construed to authorize the search or seizure of a vehicle without a warrant. So what we have here is, you know, I think the officers can go through the duffel bags, find out if there's a gun, a perishable item, an explosive, as the government argues below and here as well. But when you go into these black zippered bags, and inside the bags the record shows that there are envelopes that are sealed of paperwork. And to think that inside here there's some kind of perishable salami sandwich or a weapon or something like that. Could be money. Could be money, but, you know, this is a heightened expectation of privacy in these sealings. Let me turn it around on you a little bit and say, you know, you are the police guy and you've been given these bags. You can't throw them away. You're responsible for them. And you don't want the owner of the bags to come back later and say, you know, I had a million dollars in there that you guys stole or, you know, I had a very valuable computer in there, a laptop or something that, you know. So it seems to me the prudent thing to do is to do an inventory of it, you know, record all the things up front when he sees it and note it on a list and that way he can't come back later. Or if something is missing, you can tell, oh, you know, there was a laptop in there and now it's missing and you can go looking for who had custody of the item. Well, I think I'd like to draw the court's attention to the excerpt 109 when Mr. Anacaldo actually talks about what is in that black zippered bag and that they're sealed overnight delivery envelopes. At that point, I think an inventory search can very well be, we found a black zippered bag like a bank bag, we found inside of it sealed documents and that's enough. I mean, if you break the seal and you open it, then there's evidence that you tampered with it. But if they're sealed documents like the record indicates, then I don't think you get to open that under a Chadwick and certainly there is no written standard established policy that says you can open these things. Okay, you've got about half a minute. Do you want to save that? I think I'll save that. Thank you, Your Honor. Okay, we'll hear from the government. Your Honor, may it please the court, my name is Tom Boyds. I represent the United States in this matter. Your Honor, the scope of consent actually is not an issue that needs to be decided by this court because it was a proper inventory search of these items. The police had to do something with these bags. How many were they? Were they duffel bags as Judge Kuczynski refers to them? That's what the record reveals. It's not in the record actually how many bags there were, but there were multiple bags. That's what the testimony was at the trial court level. And the question was what are you going to do with these bags where you've got a rental car that's not authorized to be driven in Seattle, that is illegally parked, there's no one else available on the scene to take it, and he's not authorized anyway since it's the rental car's company's car and there's nobody there on the scene. So what do you do with these bags? And what the police did is, first of all, they asked him. And he said, I want these items to be taken into safekeeping. But even if they hadn't asked him, what do you do with the bags? It was reasonable for what the police did is they followed their procedure. They could have just left them in the rental car. They probably would have gone back to the rental agency, and the rental agency I suppose would have discarded them. They could have, but they were authorized under this policy to take them. They'd probably go to guard the suit, wouldn't they? Exactly. If they took custody of the car with his stuff in it and then the police just sort of throw away your stuff, probably you get a lawsuit. What the police did here was very reasonable. Did they actually take custody of the car, or did they just call the rental agency to come and get your car? Initially they had the car towed by a private towing company to an impound lot. And when you have these bags, there's a policy as to what the police need to do, and that policy is very reasonable. First of all, there's the thought of preventing litigation that you lost my property. But there's also a safety concern. You've got issues of is there a loaded weapon in the bags? I mean, just think about moving these bags in a unit where you've got staff who's working alongside these bags. You've got the potential for hazardous materials. You have the potential for perishable items that could rot. And of course you have the issue of money. You have the lawsuit later that says, actually there was $1,000 in these sealed envelopes. That's something that the police are allowed to do under the policy, which is not allowed. It's actually good practice. I mean, they are allowed, but it's good practice to record and ensure what is in these items before they're placed in the safekeeping. And the thing is, in this case, there really wasn't a dispute about the scope of the policy at the trial court level. If you look at Judge Zilley's oral ruling in this case, he says that. There's not a dispute about the policy, and there wasn't. If you look at the two motions that the defendant filed in this case, or the memoranda in support, there's no mention about the scope of the policy, and that was briefed by the government in its response to the suppression motions. If you look at the testimony, the cross-examination of the witnesses, there's really not any dispute about that. There wasn't in the colloquy with Judge Zilley after our testimony in this case. It's really the first time on appeal that we hear that this issue about Florida V. Wells and closed containers. But not only is that waived, the policy does allow you to look at closed containers. Of course it does. Of course it does. And it says that in the policy, ensuring that there aren't perishables, ensuring that if money is going to come into the custody, ensuring there's not hazardous material or a firearm. So for all those reasons, this was a proper inventory search of the items, and the court should affirm on that basis. There was a discussion between one of the officers and the appellant about taking these bags into police custody, right? Yes. Did the officer tell him, look, if we take these into our custody, our inventory, we have to look through them. You're okay with that. Was there any testimony to that effect? There was no testimony to that effect. The fact is that the officers did engage him in asking, did he want these items to come into custody? But if we step back, that actually was above and beyond what the policy requires. Again, you've got a situation, what do we do with these bags? You leave them in the rental car company and you get a lawsuit that, look, you impounded my car and you just left all of my stuff in there and now it's lost. It was very reasonable for what the police did in this case and followed the procedure. They did engage him above and beyond and said, what do you want us to do? Do you want us to take these items into custody, into safekeeping? And what Judge Zille found is that's what, in fact, happened. And it really wasn't even challenged in the trial court. The defendant's testimony was, I wasn't thinking about my bags at this time. He said that twice during his testimony. And so on a clear error standard of review, he did give and authorize these items to be taken into custody. But, again, that's not even the standard. If he had said no, just leave them in the car, would the police have inventoried the bags anyway? They may have because, as the appellant points out, when a car is impounded, there's a separate portion of the policy. Separate, I want to make that clear. There's really two inventory policies sort of in play in this case. The first is items that are put into safekeeping at the police station. That's what's this case. But if that hadn't happened, if those items hadn't been taken to the police station and put into safekeeping, then the question is, what happens? And there's a separate portion of the policy that says, you inventory items to ensure there's not valuables. Again, to prevent the lawsuit that comes down when the claim is my Rolex watch or my $1,000 in bills or any sealed envelopes. So it very well would have been inventoried under that problem. But for all those reasons, the court should affirm on the basis that it's a valid inventory search. Okay, thank you. Thanks. You've got about half a minute left. You may take it if you wish. Your Honor, quickly to correct a mistake by the government in this case, there was a defendant's reply to government's response to motion to suppress evidence where she raises the Florida v. Wells issue, including whether you can search closed containers and sealed envelopes. So that is part of the record, and that was argued before the ruling. And lastly, I just want to say that if you read Florida v. Wells, you'll see a striking similarity between that case and the case of Barr. And I ask this Court to please reverse the connection. Thank you, Your Honor. Thank you very much. The case is argued. We'll stand for a minute.
judges: Burns, Kozinski, Paez